Scotty **MILLER**, Appellant,

v.

**STATE of Texas, Appellee.**

**No. 13-83-444-CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1984.

Albert A. Pena, III, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before UTTER, BISSETT and YOUNG, JJ.

## OPINION

UTTER, Justice.

Appellant was convicted by a jury of communicating gambling information. Punishment, also determined by the jury, was assessed at two years' confinement and a fine of $5,000.00, but the confinement was probated for two years. Princi-

pal issues on appeal include whether appellant's indictment should have been quashed, whether the evidence was sufficient to support the conviction and whether evidence of extraneous offenses was improperly admitted into evidence. We reverse the judgment of the trial court and order that the indictment be dismissed.

Police Officer Earl Rigby testified that, on November 20, 1982, pursuant to a gambling investigation, he telephoned appellant Miller and identified himself with bettor's number 333. The conversation was recorded on tape, and the transcript of that tape was introduced into evidence at trial.[1]

Two days later, on November 22, 1982, several police officers, including Officer Rigby, executed a search warrant at appellant's residence at approximately 10:45 a.m. The officers attached recording devices to two telephones at appellant's residence and "monitored" incoming calls until approximately 8:00 p.m. that evening. The trial evidence established that most of the incoming phone calls "concerned gambling" on football. Appellant and his wife were arrested at the time the search warrant was executed.

## MOTION TO QUASH

Appellant's indictment charged that:

1. MILLER: Hello.
RIGBY: Ya'll been a little busy this morning.
MILLER: Uh, yeah.
RIGBY: 333, what'd it look like?
MILLER: Yeah uh, can you hang on a second?
RIGBY: Yeah.
(LONG PAUSE) [Appellant then was overheard to state:]
.........unintelligible......where is he, in the hospital? That's true, but....unintelligible...There ain't gonna be no more professional football games. One, two, three, four, five, six, seven, eight, nine games.
MILLER: .........State, plus one.
   Mississippi State, minus 4½
   Arkansas, plus 1½
   Washington State, plus 18
   A & M, minus 4½
   .....that's all the colleges.
   Chicago, plus 3
   Miami, plus 1
   Cleveland, minus 7
   Unintelligible

"on or about the 22nd day of November A.D. 1982 ... [he] did then and there with the intent to further gambling, knowingly communicate information as to betting odds on football games to a person and persons whose identity is unknown to the Grand Jury."

In his fifth ground of error, appellant contends that the trial court erred by overruling his motion to quash the indictment. Appellant argues that the offense, with which he was charged, was not set forth "in plain and intelligible words" because it failed to state the substance of the communication, the manner or means of making such communication or the time when and the place where the communication was allegedly made. More particularly, appellant urges that, while the evidence showed the offense occurred on November 20, 1982, the indictment charged that it occurred "on or about" November 22, 1982. Appellant concedes that the named date of an offense need not always be exact but contends that specificity is required in this case because the indictment also failed to articulate the precise communication which engendered this prosecution.

■ The two functions of an indictment are (1) to give the trial court jurisdic-

Yeah, the usual? OK, babe. Tell him thanks alot; I hope he gets OK brother. Yeah, OK. Tell him good luck up there. Alright brother. (Back to conversation)
MILLER: Yeah babe, I'm sorry.
RIGBY: Hey, you still got A & M at 4½?
MILLER: Huh?
RIGBY: You still got A & M at 4½?
MILLER: Who's this?
RIGBY: Uh, this 333.
MILLER: No, it ain't.
RIGBY: What do you mean, no it ain't?
MILLER: Huh?
RIGBY: Uh, gimme, you still got A & M at minus 4½?
RIGBY: Scotty.
MILLER: Yeah.
RIGBY: Do you still have A & M at minus 4½?
MILLER: Yeah. Who is this?
RIGBY: This is 333A.
MILLER: 333A?
RIGBY: Yeah.
MILLER: Well, I don't have no 333A.
MILLER: Just tell him to uh, 333 to call me.
RIGBY: Oh OK, uh OK, bye.

tion over the case and (2) to provide notice to an accused of the offense charged. *Benson v. State,* 661 S.W.2d 708 (Tex.Crim. App.1982). The indictment in the case before us does allege the offense of communicating gambling information and thus confers jurisdiction on the trial court. Our inquiry is thus limited to whether the indictment provided adequate notice of the accusations against the accused. *Ferguson v. State,* 622 S.W.2d 846 (Tex.Crim. App.1981). A motion to quash should be granted if the language of the indictment is so vague or indefinite as to deny the accused effective notice of the acts he allegedly committed. The face of the instrument must set forth, in plain and intelligible language, sufficient information to enable the accused to prepare his defense. *Haecker v. State,* 571 S.W.2d 920 (Tex. Crim.App.1978). The charging instrument must be examined *from the perspective of the accused* and in light of the presumption of innocence; consequently, the reviewing court may not look beyond the face of the charging instrument in determining whether the offense specified in the information was sufficiently alleged. *Coleman v. State,* 643 S.W.2d 124 (Tex.Crim.App.1982). The accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish. *Ferguson,* 622 S.W.2d at 848.

■ We are aware of the general rule which states that an indictment which "tracks" the words of an applicable penal statute is almost always legally sufficient. Definitions of terms and elements that are defined in the Penal Code are thus substantively "evidentiary" rather than "essential," and the State need not allege its evidence in the indictment. *Thomas v. State,* 621 S.W.2d 158 (Tex.Crim.App.1981); *Phillips v. State,* 597 S.W.2d 929 (Tex. Crim.App.1980).

■ Whether the nature of the alleged conduct is "evidentiary" or "essential" appears to be determined on a case-by-case basis. If the Penal Code defines an action or provides that an action may be performed in more than one manner, a proper indictment must distinguish the conduct alleged and specify on what means of performance the State will rely. *Gibbons v. State,* 652 S.W.2d 413 (Tex.Crim.App.1983); *Ferguson v. State,* 622 S.W.2d 846 (Tex. Crim.App.1981). The test is whether the language of the statute is completely descriptive of the acts constituting the alleged offense so as to inform the defendant of the nature of the charge. *See Ferguson,* 622 S.W.2d at 848–850; *Haecker,* 571 S.W.2d at 921.

However, a more difficult problem is presented when determining whether the nature of alleged conduct which is undefined in the Penal Code is "evidentiary" or "essential." When the charged conduct is considered "evidentiary," the courts seem to state their decision in a rather conclusory manner. For instance, in the case of *Inman v. State,* 650 S.W.2d 417 (Tex.Crim. App.1983), the defendant was convicted of attempted theft of an automobile. The defendant contended that the information, by which he was charged, should have explained the term "remove" as used in the sense of "attempting to remove said automobile." The Court found the information adequate because:

> Although "remove" could encompass various acts, as used in the present case it is simply a factual description of the underlying offense and is in no way essential to giving notice in light of an otherwise sufficient information. The description requested by appellant was "essentially evidentiary" rather than being required for purposes of notice and plea in bar.

*Inman,* 650 S.W.2d at 420.

However, in the case of *Jeffers v. State,* 646 S.W.2d 185 (Tex.Crim.App.1981), the Court reiterated the rule that a motion to quash will be allowed if the *facts* sought were essential to giving notice. *See Cruise v. State,* 587 S.W.2d 403 (Tex.Crim.App. 1979); *Haecker v. State,* 571 S.W.2d 920 (Tex.Crim.App.1978). Also, the Court in *Jeffers* also cited the case of *Drumm v. State,* 560 S.W.2d 944 (Tex.Crim.App.1977), in which the accused should have been told

under which of five statutory provisions the State had suspended his driver's license.

In the case before us, appellant was indicted under TEX.PENAL CODE ANN. § 47.05 (Vernon 1974), which states, inter alia, that a person commits an offense if, with the intent to further gambling, he knowingly *communicates* information as to betting odds. Appellant's indictment, previously reproduced, "tracks" this statute.

In the cases of both *Smith v. State,* 658 S.W.2d 172 (Tex.Crim.App.1983) and *Jeffers,* the defendants were prosecuted under TEX.PENAL CODE ANN. § 47.03(a)(2). The indictments were almost identical to each other and "tracked" the applicable statute, charging that each defendant did:

> "intentionally and knowingly receive a bet and offer to bet by RICHARD L. BENTON on ... a [named] professional football game ...."

*Smith,* 658 S.W.2d at 173; *Jeffers,* 646 S.W.2d at 187. The defendants argued that the above indictment failed to give them sufficient notice of the manner and means by which they *received* "a bet and offer to bet." The Court noted that the bets could have been received, for example, by telephone, at a "drop," or through the mail, and stated:

> "We fail to see in what manner the State sought to prove beyond a reasonable doubt that appellant received bets and offers to bet by an individual, without adducing facts which described how the receipt took place. Appellant's motion to quash entitled him to the allegation of facts sufficient to bar a subsequent prosecution for the same offense and sufficient to give him precise notice of the offense with which he was charged. *Jeffers,* supra at 188."

*Smith,* 658 S.W.2d at 173. In both cases, the Court ruled that the indictment should have been quashed.

The term "communicate" is not statutorily defined, and it is intrinsically vague and indefinite as construed in this criminal prosecution, where the precise nature of the "communication" went to the very heart of the charged offense. The "communication" *was* the criminal act. *See Ferguson,* 622 S.W.2d at 850. The State could have easily specified the exact manner or means of the communication of gambling information for which appellant was being prosecuted.

■ If the State must specify how a bet is "received," we think the State must also specify how gambling information is "communicated." Viewing the sufficiency of the indictment from the perspective of the accused, we hold that the trial court committed error by failing to grant appellant's motion to quash. Appellant's fifth ground of error is sustained.

## EXTRANEOUS TELEPHONE CALLS

In his sixth and seventh grounds of error, appellant contends that the evidence, which shows that police officers received telephone calls concerning gambling while they monitored appellant's telephones on November 22nd, was improperly admitted. Appellant argues that this constituted prejudicial evidence of extraneous offenses which were committed subsequent to the case on trial. Additionally, appellant contends that, because appellant was not a party to the calls, the evidence was hearsay that improperly bolstered the State's direct evidence. Appellant further contends that there is no "connection" between the collateral offenses and appellant because the "record reflects that appellant participated in none of the conversations, none of the police officers pretended to be appellant, and the conversations themselves were in no way connected with the purported conversation of appellant two days prior to their utterances." The State responds that the evidence was admissible to demonstrate appellant's "intent" on the day of the charged offense; the trial court did charge the jury that it could consider evidence of extraneous offenses only "in determining the intent of the defendant...."

■ We have reviewed the cases which hold that evidence of extraneous of-

fenses may be admissible to show intent or "guilty-knowledge," or to show a common scheme, plan or design, especially where the intent is an essential element of the State's case and cannot be inferred from the actions of the accused himself. *Beck v. State*, 583 S.W.2d 338 (Tex.Crim.App.1979); *Mulchahey v. State*, 574 S.W.2d 112 (Tex. Crim.App.1978). We recognize that evidence of subsequent crimes may be admissible to show intent. *Sewell v. State*, 629 S.W.2d 42 (Tex.Crim.App.1982). Further, evidence of extraneous acts may be admissible, even if the acts did not constitute criminal offenses themselves, for the evidence may illustrate guilty intent when considered with an otherwise innocent situation by showing a consistent series of circumstances that would justify a reasonable person in finding criminal intent in a continuing course of conduct. *Crawley v. State*, 513 S.W.2d 62 (Tex.Crim.App.1974).

However, in the case of *Cain v. State*, 642 S.W.2d 806 (Tex.Crim.App.1982), the Court of Criminal Appeals, in quoting from *McCann v. State*, 606 S.W.2d 897 (Tex. Crim.App.1980), wrote:

.... it is abundantly clear that even though an extraneous offense may come within an 'exception' to the 'general rule' of exclusion of extraneous offenses it may not be received into evidence unless and until there is a clear showing that: 1) the evidence of the extraneous offense is material, i.e., going to an element of the offense charged in the indictment or information, 2) *the accused participated in the extraneous transaction being offered into evidence*, and 3) the relevancy to a material issue outweighs its inflammatory or prejudicial potential. (Emphasis added.)

*Cain*, 642 S.W.2d at 808.

An accused is entitled to be tried on the charged accusation, and not for a collateral crime or for being a criminal generally; evidence of extraneous offenses may be prohibited because it is prejudicial, tends to confuse issues and forces the accused to defend charges of which the State has provided no notice. *Cain*, 642 S.W.2d at 808.

The appellant was charged with *communicating* information with the intent to further gambling. The State used information *it received* on November 22nd to show that appellant acted with culpable intent when *he communicated* information on November 20th. However, the appellant was not a party to the telephone calls on November 22nd. They were between the officer and unidentified third-parties. The appellant did not participate in the extraneous transactions; therefore, we hold that the evidence concerning the telephone calls on November 22, 1982, should not have been admitted. *Cain*, 642 S.W.2d at 808. We sustain appellant's sixth and seventh grounds of error.

The other arguments raised in appellant's seventh ground of error are overruled. We have also reviewed appellant's first, second, fourth and eighth grounds of error, and they are overruled.

Finally, in his third ground of error, appellant challenges the sufficiency of the evidence to support his conviction. We must review the evidence in the light most favorable to the jury verdict. After reviewing the evidence, we find the evidence is sufficient to support the judgment.

The judgment of the trial court is reversed, and the indictment is ordered dismissed.

BISSETT, J., not participating.