**Gary Dale ELLIOTT, Sr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–88–097–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 23, 1989.

Rehearing Denied March 30, 1989.

James R. Mardis, Harlingen, for appellant.

Ben Eurest, Jr., Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and DORSEY, JJ.

OPINION

NYE, Chief Justice.

Appellant, Gary Dale Elliott, Sr., pleaded guilty to the offense of injury to a child and was sentenced by the trial court to confinement for life in the Texas Department of Corrections. We affirm the trial court's judgment.

On April 16, 1987, Iowa child abuse officials advised appellant, Gary Dale Elliott, and his wife, Tricia Lynn Elliott, to present their infant children, Gary and Gregory, for x-rays and medical tests. Gregory was brought in for his tests but Gary was not. A physician then told the Elliotts that Gary must be brought in for his x-rays by April 20, 1987. On that date, the Elliotts failed to bring in Gary for his x-rays. They informed the physician that they were changing doctors. However, appellant's mother stated that on April 20, 1987, she learned from her son that he was going to Webster City or the Black Hills for two or three days. Her son told her that he was tired of the hassles over Gregory and the doctors not telling him anything.

Between 9:45 p.m. and 10:00 p.m. on April 23, 1987, appellant, Gary Dale Elliott, telephoned the front desk of the Best Western Motel on South Padre Island, requesting the name of a local medical clinic. He was staying at this motel and told the desk clerk that his son (Gary) was ill. Later, he called back to the front desk requesting an ambulance. He informed the clerk that his son was wheezing and experiencing breathing problems. An ambulance was called at 10:54 p.m. Appellant, Gary Dale Elliott, entered the motel lobby carrying his son wrapped in a blanket. Gary was not breathing at the time, and he started giving his son mouth to mouth resuscitation. The ambulance arrived at 10:58 p.m., and a paramedic examined Gary. Gary's body

felt cold and his pupils were fixed and dilated.

Gary was rushed to a hospital and examined by Dr. Iturbe. His examination revealed that Gary had suffered a skull fracture. Appellant, Gary Dale Elliott, told Dr. Iturbe that he knew nothing about the injury. He did say, however, that his two year old son struck Gary with a toy top, causing a small bruise just below his left eye. He also said that he tried to administer CPR to his son but did not know what he was doing. Gary died at 3:00 a.m. on April 25, 1987.

On April 25, 1987, an autopsy performed in Texas revealed that Gary died as a result of blunt trauma to the head producing fractures to the right frontal and parietal bones. The parietal bone is the bone covering the back of the head. These fractures were approximately ten days old. The pathology report also notes a hemorrhage in the brain and dilation of the brain's lateral ventricles. Hemotomas (subcutaneous swellings filled with effused blood) existed over the brain's left cerebral hemisphere and beneath the skin of the occiput (back of the head). The infant also had acute bronchitis and mild pneumonitis. The pathologist stated that the injuries appeared to be the result of child abuse.

On April 28, 1987, a second autopsy was performed on Gary in Iowa. In addition to the head injuries, the Iowa State Medical Examiner discovered fifteen rib fractures ten to fourteen days old. The medical examiner's opinion relates that the rib fractures and head injuries postdate Gary's discharge from the hospital two weeks prior to death. He also opined that Gary died as a direct result of these traumatic injuries, notably the head injuries.

Tricia Lynn Elliott gave a statement saying that during the week of April 6, 1987, she saw appellant, Gary Dale Elliott, hitting Gary on the chest. She also saw the after effects of what she believed to be blows to Gary's head, face, and body caused by her husband. She also stated that she wanted to get help for Gary but was extremely afraid of her husband.

While appellant, Gary Dale Elliott, was in jail awaiting trial, he wrote a letter to his wife. This letter was admitted into evidence during his guilty plea. In reference to his deceased son, Gary, he wrote: "We both know that we would have taken him in to the hospital if it had not been for what we had already gone through there."

By his first point of error, appellant, Gary Dale Elliott, argues that the trial court, in accepting his guilty plea, failed to comply with the requirements of Tex.Code Crim.Proc.Ann. art. 1.15 (Vernon 1977) because the evidence does not support his conviction. In reviewing the sufficiency of the evidence to support a conviction, we look at all the evidence in the light most favorable to the verdict or judgment and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984). In the instant case, appellant, Gary Dale Elliott, pled guilty to paragraph three of the indictment. Omitting the formal parts, paragraph three alleges that appellant, Gary Dale Elliott, on or about the 23rd day of April, A.D. 1987 "did then and there unlawfully, intentionally and knowingly engage in conduct that caused serious bodily injury to Gary Dale Elliott, Jr., a child younger than fifteen years of age, by failing to provide the said child with timely and adequate medical attention which the Defendant, the father of said child, had a statutory duty to so provide."

In support of its case, the State offered into evidence the "WRITTEN WAIVER AND CONSENT TO STIPULATION OF TESTIMONY, WAIVER OF JURY, AND PLEA OF GUILTY." This document is signed and sworn to by appellant, Gary Dale Elliott. It contains the phrase: "I understand that if I persist in pleading guilty and the evidence shows I am guilty, the Court will have no alternative but to find me guilty." In this same document, he stipulates that he "is the identical person named in the indictment" and that "each and every allegation is (sic) said indictment charging the offense of: Injury to a child is true and correct." He now com-

plains that this quoted language is confusing to him. He fails, however, to propound any argument explaining how this language is confusing or ambiguous. Absent any explanation or objection, we fail to see how this language is confusing or ambiguous to appellant.

■ Appellant, Gary Dale Elliott, also argues that the State failed to introduce sufficient evidence to show that he committed the offense of injury to a child by failing to provide his deceased son with "timely and adequate medical attention." In *Harmon v. State,* 649 S.W.2d 93, 95 (Tex.App.—Corpus Christi 1982, no pet.), the State offered into evidence a written document signed by the accused in which he stipulated that he "is the identical person named in the indictment" and that "each and every allegation is (sic) said indictment charging the offense of: Murder is true and correct." We held that this stipulation constituted a judicial confession and was alone sufficient to support the accused's conviction. *Harmon,* 649 S.W.2d at 95. The stipulation signed by appellant, Gary Dale Elliott, contains language akin to that already reviewed by us in *Harmon.* Therefore, we conclude that the language in the stipulation constitutes a judicial confession and is alone sufficient to support the conviction. *See Harmon,* 649 S.W.2d at 95.

■ Moreover, the Texas autopsy indicates that Gary experienced his head injuries about ten days before the autopsy date, April 25, 1987. Therefore, he suffered these injuries on or about April 15, 1987. The Iowa autopsy reveals that Gary suffered rib fractures ten to fourteen days before the date of this autopsy, April 28, 1987. Accordingly, these injuries occurred between April 14, and April 18, 1987. Subsequent to these injuries, appellant, Gary Dale Elliott, twice received advice to present Gary for medical tests. However, the evidence reveals that he did not present Gary for these tests. While at South Padre Island, he did not seek medical attention for Gary until he became seriously ill. Furthermore, the letter written by appellant, Gary Dale Elliott, and the statement given by his wife indicate that Gary was not afforded medical attention. Medical care was available to the Elliotts because their other son, Gregory, was brought in for medical tests as requested.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that appellant, Gary Dale Elliott, failed to provide Gary with "timely and adequate medical attention" as alleged in paragraph three of the indictment. *See Houston,* 663 S.W.2d at 456. Acts of omission have been found intentional by circumstantial evidence in like situations. *See Kohler v. State,* 713 S.W.2d 141, 143 (Tex.App.—Corpus Christi 1986, pet. ref'd) and cases cited therein. The first point of error is overruled.

■ By his final point of error, appellant, Gary Dale Elliott, argues that the trial court erred in overruling his motion to quash the indictment. Prior to trial, he filed and presented to the trial court a motion to quash the indictment, claiming therein that paragraph three of the indictment was "deficient by reason of vagueness, uncertainty and ambiguity, in alleging that [he] failed to provide 'timely and adequate medical attention' (to the victim)." He also argued that without further and better allegations regarding the meaning of "timely" and "adequate," he could not properly prepare his defense or comprehend the allegations against him. The trial court denied the motion to quash.

A motion to quash should be granted if the language of the indictment is so vague or indefinite that the accused is denied effective notice of the acts he allegedly committed. The face of the charging instrument must set forth, in plain and intelligible language, sufficient information to enable the accused to prepare his defense. *Haecker v. State,* 571 S.W.2d 920, 921 (Tex. Crim.App.1978); *Miller v. State,* 677 S.W. 2d 737, 740 (Tex.App.—Corpus Christi 1984, no pet.). In other words, for the accused to have fair notice of the charges against him, he must have notice of the acts or omissions he is alleged to have committed. *Gorman v. State,* 634 S.W.2d 681, 684 (Tex.Crim.App.1982). However, if

a word or term in a charging instrument goes to an act or omission of the accused, and the accused files and presents to the trial court a motion to quash, the word or term, even though statutorily defined, must be further clarified by the State because the "lack of notice of acts or omissions is by definition a denial of fair notice" to the accused. *Coleman v. State*, 643 S.W.2d 124, 125 (Tex.Crim.App.1982). Furthermore, this Court cannot look beyond the face of the charging instrument to answer the question because the test for determining the sufficiency of a charging instrument, in the face of a motion to quash wherein the accused claims he does not have sufficient notice of that with which he is charged, is to examine the charging instrument from the perspective of the accused, and in light of the presumption of innocence. *Coleman*, 643 S.W.2d at 125–26.

We conclude that the language found in paragraph three of the instant indictment charging appellant, Gary Dale Elliott, with "failing to provide [Gary Dale Elliott, Jr.] with timely and adequate medical attention" sufficiently and specifically defines the conduct allegedly committed. This language is not vague or indefinite and afforded him with fair notice of the acts or omissions he is alleged to have committed, enabling him to prepare his defense. Therefore, we hold that the trial court properly overruled the motion to quash. *See Haeker*, 571 S.W.2d at 921; *Miller*, 677 S.W.2d at 740. The final point of error is overruled.

The judgment of the trial court is AFFIRMED.