Lynda Ziegler McCANN, Appellant,

v.

The STATE of Texas, Appellee.

No. 61648.

Court of Criminal Appeals of Texas,
Panel No. 1.

Oct. 22, 1980.

Frank Elder, III, Clifton L. Holmes, Kilgore, for appellant.

Odis R. Hill, Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction of conspiracy to commit burglary of a habitation, in which the jury assessed punishment at ten years.

The evidence reveals that James Moulton, an indicted co–conspirator, was employed as a "floor mechanic," and had been sent by his employer to the residence of Mrs. Inez Phillips in Gladewater to lay vinyl flooring in a newly constructed utility room and walk–in closet during February of 1975. As part of the job, Moulton also covered the top of a floor–level safe located in the corner of the walk–in closet with the same vinyl flooring, making it difficult to detect the safe's existence. Several months later, on June 27, 1975, Moulton went to appellant's home, made a phone call to his brother in Lufkin, picked up appellant, and together they drove to the Hurricane Club

located in Longview. They were joined by Stanley Faulder and his friend Doyle Hughes. Moulton, appellant, and Faulder sat down at a table together, but Hughes placed his beer in front of a fourth chair, and returned to the table "intermittently" to drink beer while he was shooting pool.

Moulton testified that appellant and Faulder got into a conversation in which Faulder proclaimed that he was "a pool hustler and a safe cracker;" Moulton became jealous of the impression Faulder was making on appellant, so Moulton told them that he "knew where there was a safe that could be cracked pretty easy" at the Phillips residence. Moulton then drew a sketch of the house, a layout of the utility room, and told them where the safe was located in the walk-in closet. Moulton also testified that during this conversation, Hughes "came back and forth and drank beer and go back and shoot pool, but he didn't participate in the conversation." Hughes testified that he did overhear a conversation about "money, mostly money," and saw a map of a house on the table, but that he never sat down at the table.

Appellant and Faulder asked Moulton to show them the Phillips house. Shortly thereafter appellant, Faulder and Hughes got into Moulton's car and they all drove to the Phillips home in Gladewater. Moulton showed them the house, told them about a sliding glass door that was usually left open for the maid, then turned around in the parking lot behind the house and returned to Longview. Moulton and Hughes each stated that during the car trip Hughes did not participate in the conversation, but that appellant and Faulder did most of the talking about the floor safe and gaining entry. Moulton admitted participating in a discussion about how to split the loot. The entire trip took approximately one hour.

Moulton's employer, Doug Ashmore, testified that Moulton drew his last check as an hourly employee on July 9, 1975. The

domestic employee of Mrs. Phillips testified that on the morning of the same day, July 9, 1975, she reported for work, and shortly thereafter discovered Mrs. Phillips lying dead in her bed, bound and stabbed in the chest with a butcher knife. Appellant did not testify, nor did she offer any evidence on her behalf.

The appellant raises six grounds of error. In her first ground of error appellant contends that the trial court erred in admitting evidence of a capital murder because the evidence of this extraneous offense was not material to any contested issue involved in a trial for the offense of conspiracy to commit burglary of a habitation; nor was appellant or any conspirator shown to be connected with, or a participant in, the capital murder.

The record establishes by direct evidence that the conspiracy for which appellant was convicted occurred and was completed on June 27, 1975–the day that appellant, Moulton, Hughes and Faulder met at the Hurricane Club, and thereafter drove to the Phillips residence. The elements of criminal conspiracy are contained in V.T.C.A. Penal Code, § 15.02(a) as follows:

"A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement."

Thus the corpus delicti of conspiracy is the agreement and an overt act in furtherance thereof; see Brown v. State, 576 S.W.2d 36, 42 (Tex.Cr.App.1979). A conspiracy to commit a crime is a separate and distinct crime from the substantive or "object" offense. Commission of the substantive offense is not an essential element of the conspiracy charged.[1]

1.  See Farrington v. State, 489 S.W.2d 607 (Tex. Cr.App.1972). Nor must the overt act in pursuance of the criminal conspiracy be in itself a criminal act. See 15A C.J.S. 750 Conspiracy, § 43(2), n. 86.

The record further reflects that the burglary and murder of Mrs. Phillips did not occur until some two weeks later, on July 8, 1975. Over appellant's strenuous objection, the State introduced the testimony of Mrs. Frankie Mae Howard, the domestic employee of Mrs. Phillips, who was permitted to testify as follows: .

Q: Mrs. Howard, when you turned on the light what did you see?

\* \* \* \* \* \*

A: I saw Mrs. Phillips laying on the bed with a butcher knife in her chest.

\* \* \* \* \* \*

Q: Would you describe the condition of her hands?

A: Well, they were tied with \* \* \* They were tied with some pieces of gauze or something like that and had tape or something like that over her mouth and there was blood across her forehead. \* \* \*

The next witness called by the State was Texas Ranger Glenn Elliott, who was permitted to testify, over appellant's renewed objection, as follows:

Q: And what did you observe upon going into the master bedroom?

\* \* \* \* \* \*

A: I found Mrs. Phillips lying on the bed in the master bedroom on her back. She was fully clothed. She had been hit upon the head and there was a butcher knife sticking in her chest. The room was completely ransacked. The drawers were pulled from the chest of drawers and the dresser. The master closet in the bedroom had been ransacked. There was ma-

terial and items scattered all over the room.

The unmistakable inference of this evidence is that Mrs. Phillips died during the commission of a burglary; further, it invites the jury to speculate that such murder and burglary were committed by appellant.

■ The record, however, is completely devoid of any direct evidence connecting appellant, or any co–conspirator with the capital murder. There is no evidence that appellant, Moulton, Hughes or Faulder returned to the Phillips residence at any time after the car trip two weeks earlier and before the night of the burglary and murder.[2] There is not a scintilla of evidence to place any of them at the Phillips home on the night of July 8, 1975. Despite the testimony of Mrs. Phillips' son that some costume jewelry, rings, necklaces, and strings of pearls were missing, there was not a shred of evidence that appellant or any co–conspirator was in possession of any stolen items. Compare this fact situation with the decision of this Court in *Ward v. State*, 581 S.W.2d 164, 168 (Tex.Cr.App.1979), in which it was held:

"Appellant overlooks the well–established proposition that the recent unexplained possession of all or any part of the items taken in a burglary is sufficient to sustain a conviction for burglary. [Citations omitted] The proof in the instant case that the appellant was in possession the very next day of the credit cards taken in burglaries was sufficient to show he was the perpetrator of the extraneous offenses and justified the admission of evidence of the burglaries on that score."

■ It is an established general rule of evidence that proof of extraneous transactions is irrelevant to the contested material issues in the case on trial, and therefore

2. The State suggests linkage in that the burglary was committed just as planned; yet, we are left to wonder who implemented the plan. For all this record shows, in the intervening days Moulton may have found new confederates.

inadmissible.[3]  As we stated in *Murphy v. State*, 587 S.W.2d 718, 721 (Tex.Cr.App. 1979):

"In a criminal proceeding, when the extraneous or similar transaction *committed by the accused*,[4] sought to be admitted by the State, constitutes a criminal offense, introduction of that 'extraneous offense' transaction is inherently prejudicial because: 1) the accused is entitled to be tried on the accusation made in the State's charging instrument which specifies 'material issues' of the case and cannot—consistent with the rudiments of due process—be tried for some collateral crime of which he had no notice, [citations omitted], and 2) an accused's 'propensity to commit crimes' is not an issue which is material to whether he is guilty of the specified conduct charged by the State;  . . ."

Here appellant was charged with criminal conspiracy. The indictment, as set out below,[5] makes no mention of capital murder, and it clearly is not relevant to any material issue involved in a criminal conspiracy prosecution.  In fact, the State amply proved by direct testimony each element of the conspiracy charged on trial and appellant offered no contest to this proof. Though the overt acts alleged and proven here are not as far along in effectuating the object as in, say, *Roberts v. State*, 375 S.W.2d 303 (Tex.Cr.App.1964), we find the preliminary arrangements for committing the offense took the conspiracy beyond a mere meeting of minds.  15A C.J.S. 748–749, "Conspiracy" § 43(2) and cases cited, especially in note 78.5.

■ More significantly, here the State sought to introduce evidence of the capital murder with insufficient proof connecting appellant to the extraneous offense.  In *Landers v. State*, 519 S.W.2d 115, 120 (Tex.Cr.App.1975) the Court unequivocally stated the rule thus:

"It must be remembered, however, that even though evidence of another crime may be relevant to the instant proceeding, *such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator.*"  [Original emphasis]

Evidence of extraneous offenses should not be introduced unless and until it is shown that the accused was the perpetrator of such offenses.  See *Eanes v. State*, 546 S.W.2d 312, 315 (Tex.Cr.App.1977), *Tomlinson v. State*, 422 S.W.2d 474 (Tex.Cr.App. 1967), *Tippins v. State*, 530 S.W.2d 110, 111 (Tex.Cr.App.1975), and 23 T.J. Evidence § 195 (1961).

There is some disagreement, as reflected in the case law, on the applicable standard of proof required to admit evidence of extraneous offenses.  One line of cases holds that the proof must be sufficient "to connect" the accused with the extraneous offense, or indicate "with a reasonable degree of certainty" that the accused committed the extraneous offense.  See *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979), *Fentis v. State*, 528 S.W.2d 590 (Tex.Cr. App.1975), and *Carmean v. State*, 163 Tex. Cr.R. 218, 290 S.W.2d 240 (1956).  Another line of cases states what seems to be a more demanding standard of proof, i. e., that the accused must first be shown "to have committed" the extraneous offense, and to "have been its perpetrator."  See *Landers*,

3. See *Finley v. State*, 573 S.W.2d 238 (Tex.Cr. App.1978) and *Grayson v. State*, 481 S.W.2d 859 (Tex.Cr.App.1972).

4. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

5. "[Appellant] did then and there knowingly, with intent that a felony, namely, Burglary of the Habitation of Inez Phillips be committed, agree . . . that the said Lynda Zielger McCann and Joseph Stanley Faulder engage in conduct that would constitute the offense, namely: that the said Lynda Ziegler McCann and Joseph Stanley Faulder enter the habitation of Inez Phillips, . . . with intent to commit theft, and the said James Millard Moulton, Jr. performed an overt act in pursuance of said agreement, to wit, he did describe . . . the location of the safe in the habitation of Inez Phillips and prior to the offense, he did direct and accompany Lynda Ziegler McCann and Joseph Stanley Faulder to the habitation of the said Inez Phillips."

supra, *Eanes*, supra, *Tippins*, supra, and *Tomlinson*, supra. However, under either standard of proof, the extraneous offense of capital murder was not here admissible. The State simply presented *no* evidence that connected appellant with, certainly none that she committed, the capital murder.

Under the authority cited above, it is abundantly clear that even though an extraneous offense may come within an "exception" to the "general rule" of exclusion of extraneous offenses [6] it may not be received into evidence unless and until there is a clear showing that: 1) the evidence of the extraneous offense is material, i. e., going to an element of the offense charged in the indictment or information, 2) the accused participated in the extraneous transaction being offered into evidence, and 3) the relevancy to a material issue outweighs its inflammatory or prejudicial potential; see *Murphy*, supra, and *Ruiz v. State*, 579 S.W.2d 206 (Tex.Cr.App.1979).

It is to be anticipated, therefore, under the applicable proof requirements as here outlined, that during a trial for criminal conspiracy, the "object offense"–the crime the accused was agreeing to commit–would rarely be admissible. This is so because, it only stands to reason, that if there were sufficient evidence to show that the accused committed the offense, the accused would be prosecuted for the "object offense" itself, and not merely "conspiring" to commit it. The danger of charging an accused with criminal conspiracy, and then inferentially trying and convicting an accused of a larger completed offense, is amply demonstrated here. In effect, appellant was tried and convicted for capital murder under the guise of a prosecution for criminal conspiracy. This constitutes reversible error, and we need not reach her other grounds of error.

For the foregoing reasons, the judgment of conviction is reversed and the cause remanded.

---

**6.** See *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972) for a general discussion of the so-called "exceptions" to the "general rule" of exclusion for extraneous offenses. As therein stated: "A relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown."