02-09-426&427&428-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NOS.  02-09-00426-CR

          02-09-00427-CR

          02-09-00428-CR

 


 
 
 Gary Nolen Huddleston
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
415th District Court OF Parker COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          A jury
found Appellant Gary Nolen Huddleston
guilty of two counts of aggravated
kidnapping and one count of conspiracy to commit aggravated robbery.  Huddleston pleaded “true” to the enhancement
allegations, and the jury assessed punishment at life imprisonment in the two
aggravated kidnapping causes and at ninety-nine years’ imprisonment for the
conspiracy cause.  In four points, Huddleston challenges the sufficiency of the
evidence.  We will affirm.

II. 
Factual and Procedural Background

On
January 16, 2007, Casey McCarter received a call at work from his mother, who
lives near Casey’s residence.  She asked
Casey to come home because she saw someone that she did not recognize at
Casey’s house.  When Casey arrived home,
he was confronted by an armed man wearing all black, a mask, and
sunglasses.  The man told Casey, “We’re
just here for the money.  Do what you’re
told and no one will get hurt.”  When Casey began to question the man, a second
armed intruder stepped out of the kitchen behind him; the man told Casey to
shut up and that they would ask the questions.[2]  The men made Casey sit in a chair, and they
blindfolded him.

The
men interrogated Casey about employees of the Wells Fargo Bank where his wife
worked.  Casey became angry at one point,
took off the blindfold, stood up, and grabbed the barrel of No. 1’s gun.  No. 2 pointed a black Beretta pistol at
Casey’s head and threatened to kill him.  Following this exchange, the intruders blindfolded
Casey again and bound his arms and legs to a chair with zip ties.

Casey’s
wife Dawn McCarter arrived home from work soon thereafter.  The intruders confronted Dawn while
brandishing firearms, blindfolded her, and interrogated the McCarters
for several hours about Wells Fargo Bank’s employees, procedures, and
safeguards.  Casey testified that during
this interrogation, the men threatened to cut off his fingers if he did not
respond truthfully to the questions.  Dawn informed the men that another bank employee
was scheduled to open the bank the next morning instead of her.  The duo’s plan continued to evolve as they
learned more information about the bank and its procedures.

The
next morning, No. 2 took Casey’s vehicle to the other bank employee’s house to
disable her car, in the hopes that Dawn would then have to open the bank.  No. 1 drove Dawn in her car to the bank,
leaving Casey tied to a chair in the house.  However, while No. 2 was attempting to disable
the bank employee’s car, he was spotted by that employee’s husband, who gave
chase and called the police.  No. 2 used
a cell phone to call No. 1.  No. 2
informed No. 1 that he was fleeing from the police and told No. 1 to abort
their plan to rob the bank.  As a result,
No. 1 left Dawn in her own vehicle, and he fled with No. 2.

The
police conducted DNA testing on a clear drinking glass, a Styrofoam cup, and a
paper napkin that had been used by the kidnappers in the McCarters’
home.  DNA testing revealed that
Huddleston was the major contributor of genetic material to a scientific
certainty.[3]  In Casey’s vehicle, police found a handgun, a
pair of sunglasses consistent with those worn by No. 1 and No. 2 during the
kidnapping, and a blood stain on the driver’s side window.  DNA testing of the blood stain proved, to a
scientific certainty, that Huddleston was the single contributor of genetic
material and that he had been inside that vehicle.

Cell
phone records revealed a number of calls between Huddleston and his codefendant, Cary McGowen,
during the alleged offenses.  Police
learned that Huddleston and McGowen were cellmates during
a period of incarceration and that Huddleston had five prior convictions for
offenses ranging from armed bank robbery in two different states to involvement
in a “chop-shop” operation.[4]

A
search of Huddleston’s home also revealed a gym bag similar to the one
described by the McCarters containing a wig, zip
ties, gloves, a police scanner, a screwdriver, a hammer, and a crowbar.  Casey identified the hammer, which had been
taken from his garage, as his father’s.

III.  Sufficiency of the Evidence

Huddleston’s first three points complain of the
sufficiency of the evidence to support his conviction for conspiracy to commit
aggravated robbery.  Huddleston argues in
his first two points that the evidence supporting the conspiracy conviction is
factually insufficient because the evidence shows, at best, Huddleston’s mere
presence at the crime scene at some point in time and because there is a lack
of evidence to show an agreement between Huddleston and McGowen.  Huddleston argues in his third point that the
evidence is legally insufficient to support his conspiracy conviction because
it fails to show an agreement that a gun would be used to rob the bank. In his
fourth point, Huddleston argues that the evidence is factually insufficient to
support his aggravated kidnapping convictions because there was no evidence
that he was the individual who displayed a deadly weapon or restrained the
victims and there was no evidence that he was in agreement with the actions
taken by his co-defendant.

Because
the Texas Court of Criminal Appeals recently held in Brooks v. State that there is no meaningful distinction between the
Clewis v. State[5] factual
sufficiency standard and the Jackson v.
Virginia[6]
legal sufficiency standard, we will analyze Huddleston’s arguments under the
standard set forth in Jackson.  See
Brooks, 2010 WL 3894613, at *8.

A.  Standard of
Review

In
reviewing the sufficiency of the evidence to support a conviction, we view all
of the evidence in the light most favorable to the prosecution in order to
determine whether any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).

This
standard gives full play to the responsibility of the trier
of fact to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact
is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@  Hooper v. State, 214
S.W.3d 9, 16B17 (Tex. Crim. App. 2007).  We must presume that the factfinder
resolved any conflicting inferences in favor of the prosecution and defer to
that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

B.  Aggravated Kidnapping

To
prove aggravated kidnapping, the State must prove that the accused
intentionally or knowingly abducted another person and used or exhibited a
deadly weapon during the commission of the offense.  Tex. Penal Code Ann.
20.04(b) (Vernon 2003); Hines v. State,
75 S.W.3d 444, 446 (Tex. Crim. App. 2002).  “Abduct” means to restrain a person with the
intent to prevent his liberation by either secreting or holding him in a place
where he is not likely to be found, or using or threatening to use deadly force.  Tex. Penal Code Ann. § 20.01(2)
(Vernon 2003).  “Restrain” means
to restrict a person’s movements without consent, so as to interfere
substantially with the person’s liberty, by moving the person from one place to
another or by confining the person.  Id. § 20.01(1).  Such restraint is without consent if it is
accomplished by force, intimidation, or deception.  Id.
§ 20.01(1)(A).  Thus,
kidnapping is a completed offense when (1) a restraint is accomplished and (2)
there is evidence that the actor had the specific intent to prevent liberation
by secretion or by the use or threatened use of deadly force.  Santellan v. State,
939 S.W.2d 155, 163 (Tex. Crim. App. 1997) (holding that the only requirement
for restraint is that the interference with liberty be substantial); Jenkins v. State, 248 S.W.3d 291, 293
(Tex. App.—Houston [1st Dist.] 2007, pet ref’d).

For
certain offenses, such as burglary, fingerprints or DNA evidence constitute
direct evidence of the ultimate fact to be proved and therefore are sufficient
to sustain a conviction without further identification evidence.  Clayton,
235 S.W.3d at 779. 
When DNA does not constitute direct evidence of the ultimate fact to be
proved, it merely establishes the defendant’s presence at the scene at some
time.  Id.  However, this type of
evidence constitutes circumstantial evidence to be considered with the
remaining direct and circumstantial evidence. 
Id.

Here,
Casey’s testimony establishes that two men, both brandishing firearms,
restrained him by threatening to hurt or kill him and later by tying his arms
and legs to a chair with zip ties.  See Tex. Penal Code Ann. § 20.01(1)(A); Santellan,
939 S.W.2d at 163; see also Hines, 75 S.W.3d at 448 (holding that brandishing a
shotgun and ordering a bank employee to disable the bank’s alarm and open the
vault constituted restraint); Jenkins,
248 S.W.3d at 295 (holding sufficient evidence of restraint existed when
defendant forced his way into a home, brandished a gun, and refused to let
victims leave).  Casey was still bound to
his chair with zip ties and had to be freed by police the following
morning.  The McCarters’
testimony further establishes that the two men also restrained Dawn in the
couple’s living room by threatening her while brandishing firearms and by forcing
her to move from her home to the bank in the passenger side of her
vehicle.  See Hines, 75 S.W.3d at
446.

Huddleston
argues that because the McCarters never identified
him as one of the intruders and because the DNA evidence placing him at the McCarters’ house does not establish when he was there, the evidence was insufficient to identify him as
one of the kidnappers.  But evidence at
trial, including the testimony of Chief Edward Crowdis
and Officer Anne Hollis of the Springtown Police Department, who conducted a
crime scene investigation in the McCarters’ home,
further corroborated the McCarters’ testimony and
identified Huddleston and McGowen as the two men who
kidnapped the McCarters and conspired to rob the
bank.  See Clayton, 235 S.W.3d at 779.  Officer Hollis located DNA evidence showing
Huddleston’s presence inside the McCarters’ home and
Casey’s vehicle.  The McCarters
testified that they did not know Huddleston or McGowen,
that the two men had never been granted access to their house or vehicles, and
that the DNA evidence that police found in their house had been left during the
intrusion and kidnapping.  The same type
of zip ties used to tie Casey to the chair, in addition to a hammer and crowbar
taken from the McCarters’ house, were later found in
Huddleston’s belongings.  Evidence at
trial showed that Huddleston repeatedly used his cell phone near the McCarters’ home on the morning of the offense to call McGowen, whose DNA was also found
at the McCarter’s house.  The DNA
evidence circumstantially established Huddleston’s presence at the crime scene,
and when combined with the McCarters’ testimony and
subsequent evidence discovered by police, was sufficient to prove Huddleston’s
identity as one of the kidnappers.  See Clayton, 235 S.W.3d at 779 (holding evidence sufficient for murder
conviction when defendant’s bloody prints were found at the scene and
additional circumstantial evidence existed).

Viewing
the evidence in the light most favorable to the jury’s verdict, we hold that a
rational trier of fact could have found beyond a
reasonable doubt that Huddleston was one of the kidnappers who restrained the McCarters while exhibiting a firearm and that he acted with
the specific intent to prevent their liberation through force and threats of
force.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789.  Accordingly, we
hold that the evidence is sufficient to support Huddleston’s convictions for
aggravated kidnapping, and we overrule Huddleston’s fourth point.

C. 
Conspiracy to Commit Aggravated Robbery

A
person commits criminal conspiracy if, with intent that a felony be committed,
(1) he agrees with one or more persons that they or one or more of them engage
in conduct that would constitute the offense and (2) he or one or more of them
performs an overt act in pursuance of the agreement.  Tex. Penal Code Ann. §
15.02(a) (Vernon 2003); McCann v. State,
606 S.W.2d 897, 898 (Tex. Crim. App. [Panel Op.] 1980).  An agreement constituting a conspiracy may be
inferred from the acts of the parties.  Tex. Penal Code Ann. § 15.02(b) (Vernon 2003); McCann, 606 S.W.2d at 898.

Huddleston
argues that there is insufficient evidence to show an agreement with McGowan to
commit aggravated robbery or that a gun would be used during the robbery.  But the evidence produced at trial suggests
otherwise.  We have already detailed the
evidence identifying Huddleston as one of the kidnappers.  Additionally, the McCarters
testified that both men who broke into their house interrogated them and
formulated a plan to rob a Wells Fargo Bank the following morning.  Phone records admitted at trial show multiple
calls between the two of them on the morning of the planned bank robbery.  Dawn was compelled to provide both men with
maps and diagrams of the bank and to explain the bank’s security measures,
procedures, and other employees, including their home addresses.  The statements made by the kidnappers were
indicative of a conspiracy to commit an aggravated robbery:  “We’re just here for the money,” “We’ll ask
all the questions,” “We have another one of the tellers already abducted and
we’ve got a phone connection between us and if you lie to us, we’re going to
cut your fingers off.”

Huddleston
performed numerous overt acts, including breaking into the McCarters’
home, threatening the McCarters while brandishing a
gun, driving Dawn to the bank the following morning, and deliberately planning
the robbery with McGowan.  The evidence
at trial showed both men exhibited a firearm at all times while the McCarters were restrained, kidnapped, and interrogated.  The McCarters
testified that the men planned to abduct the second bank employee inside the
bank the following morning to gain access to the safe.  Both men wore gloves to avoid leaving
fingerprints and wore masks to conceal their identities.  When McGowan was discovered flattening the
tires of the bank supervisor’s car, he called Huddleston for help while eluding
police.  Huddleston picked up McGowen, and the two fled together. McGowen
left a handgun loaded with fifteen rounds of live ammunition in one vehicle and
fled with Huddleston in another.

Viewing
the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have inferred that
Huddleston agreed with McGowen to commit aggravated
robbery and that Huddleston performed overt acts in pursuance of the
agreement.  See Tex. Penal Code Ann. § 15.02(a); Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; McCann, 606
S.W.2d at 898; see also Campbell v. State,
128 S.W.3d 662, 671–72 (Tex. App.—Waco 2003, no pet.) (noting
that it is doubtful one can exhibit a deadly weapon during the commission of a
felony without using it to achieve an intended result).  Accordingly, we hold that the evidence is
sufficient to support Huddleston’s conviction for conspiracy to commit aggravated
robbery, and we overrule Huddleston’s first, second, and third points.

IV.  Conclusion

Having
overruled Huddleston’s four points, we affirm the trial court’s judgments.

 

 

SUE WALKER
JUSTICE

 

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  December 2, 2010











[1]See Tex. R. App. P. 47.4.





[2]At trial the two
intruders were referred to as “No. 1” and “No. 2.”  We will do the same.





[3]The probability of
selecting an unrelated person at random who could have
been the source of the DNA was 1 in 460 quintillion, or expressed another way, 1
in 70 billion times the world’s population.





[4]A “chop-shop” is
generally a location or business that disassembles stolen vehicles for the
purpose of selling them for parts.  The
State presented evidence of Huddleston’s previous conviction for the removal or
alteration of vehicle identification numbers during the punishment phase of
trial.





[5]922
S.W.2d 126 (Tex. Crim. App. 1996), overruled
by Brooks v. State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6, 2010).





[6]443
U.S. 307, 99 S. Ct. 2781 (1979).