

## NUMBER 13-09-00497-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**VICTOR WILLIAM BACH,**                                                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS**                                                                                    **Appellee.**

---

### On appeal from the 107th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Vela**
**Memorandum Opinion by Justice Benavides**

Appellant, Victor William Bach, was found guilty of criminal conspiracy to commit murder for hire. *See* TEX. PENAL CODE ANN. § 15.02(a) (Vernon 2003). The State sought enhancement of punishment under the Texas Code of Criminal Procedure based

on Bach's prior felony convictions.[1]   After waiving jury sentencing, Bach was sentenced to thirty years' confinement in the Texas Department of Criminal Justice-Institutional Division.   By five convoluted and overlapping issues, Bach contends that the evidence introduced at his trial was insufficient to show that he:  (1) intended to murder the alleged victim; (2) did not express an intent to completely withdraw from the conspiracy; (3) undertook some overt act to further the conspiracy; and that (4) the evidence was insufficient because no corroborating evidence was presented beyond the alleged accomplice's testimony; and (5) the trial court erred in not defining "preponderance of the evidence" in the jury charge as it applied to Bach's affirmative defense of renunciation. We affirm.

## I. BACKGROUND

In June of 2007, Mauro Sauceda and Ruth Jara were divorced.   Following their divorce, Sauceda's "long-time acquaintance," Bach, was arrested for failure to pay child support.   Before Bach's arrest, Sauceda solicited Bach to murder his ex-wife, Jara, with no apparent success.   After Bach was taken into custody, Sauceda continued to solicit Bach to murder Jara and offered to pay approximately $5,000 in Bach's back child support so that Bach could be released from custody.   Sauceda also offered to pay additional money as compensation.   Sauceda testified that he paid "close to $10,000" to Bach.   This deal was allegedly made in code over the phone where Bach said, "I'm going to take care of the truck.   I'm going to do some repairs."   The phone conversation between Sauceda and Bach was recorded while Bach was in custody.[2]

---

[1] Bach had previously served prison terms for two separate third-degree felony DWI convictions and an eight-year prison term for burglary.   See TEX. CODE CRIM. PROC. ANN. art. 12.42 (Vernon 2005) (enhancement statute).

[2] The telephone recordings were not entered into evidence at Bach's trial.

2

FBI agents who monitored the jail telephone conversation notified the Cameron County Sheriff's Department of what they believed was a plot to murder Jara. With the help of the Edinburg Police Department, Jara was notified and told to take precautions while the investigation continued. Sauceda did in fact pay Bach's back child support and Bach was released from custody. Nine days later, Bach and Sauceda were located by the police, and each was arrested on charges of conspiracy to commit murder. After a search warrant was executed, financial records were found evidencing Sauceda's payments to Bach.

Sauceda pleaded guilty and was sentenced to six years' imprisonment. During Bach's trial, Sauceda testified as to the circumstances surrounding the agreement, his payment to Bach, and his expectation that Bach would go through with the murder. Sauceda testified that, to his knowledge, Bach had not taken any action to effectuate the murder, but that Bach had continuously expressed his intent to follow through and to solicit others to assist him.

Bach pleaded not guilty. At trial, Bach testified that he had made an agreement with Sauceda to murder Jara, but that he never intended to follow through with his part of the bargain. Bach also testified that he took Sauceda's money as part of the agreement because he was "desperate" to get out of jail, but claimed that he only intended to defraud Sauceda of the money—he never intended to carry out the murder. Bach testified that he had renounced his intent to be involved in the conspiracy, but did not show any evidence of a specific act of renunciation. Bach testified that his renunciation was evidenced by his failure to take any action in furtherance of the agreement and the fact that he only wanted to steal money from Sauceda.

3

The evidence indicated that, in nine days after being released from jail, Bach had taken no action to effectuate the murder. There was no evidence that Bach had attempted to contact or otherwise harm Jara, nor was there evidence that he was in possession of a weapon at any relevant time.

Bach was found guilty of criminal conspiracy. Following the verdict, Bach elected to waive his prior jury-sentencing request. The court sentenced Bach to thirty years' imprisonment. This appeal ensued.[3]

## II. SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

The Texas Court of Criminal Appeals has held that our only sufficiency review should be under "a rigorous and proper application" of the *Jackson* standard of review. *Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) (The jury, in all cases is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000)

---

[3] After receiving a copy of the State's Reply Brief in this case, Bach filed a pro se motion to abate this appeal. The State, on April 29, 2010, filed a Motion to Strike Appellant's Pro-se Motion to Abate. On May 6, 2010, we denied Bach's motion to abate the appeal. The State's motion, which was never ruled upon, is dismissed as moot.

4

("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.")

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Bach: (1) with intent to commit a felony; (2) agreed with Sauceda that one or both of them engage in conduct that would constitute murder; and (3) he or Sauceda performed an overt act in pursuance of the agreement. *See* TEX. PENAL CODE ANN. § 15.02(a) (Vernon 2003). Intent may "be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant," and "[a]n agreement constituting a conspiracy may be inferred from acts of the parties." TEX. PENAL CODE ANN. § 15.02(b) (Vernon 2003); *cf. Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim App. 2004). Thus, "the corpus delicti of conspiracy is the agreement and an overt act in furtherance thereof." *McCann v. State*, 606 S.W.2d 897, 898 (Tex. Crim. App. 1980). However, a defendant charged with criminal conspiracy may not be convicted on the basis of the uncorroborated testimony of a co-conspirator. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). We also note that a "conspiracy to commit a crime is a separate and distinct crime from the substantive or 'object' offense. Commission of the substantive offense is not an essential element of the conspiracy charged." *McCann*, 606 S.W.2d at 898.

## B. Analysis

By his first and third issues, Bach contends that the State presented insufficient

evidence to show that he intended to murder Jara or to show that he performed an overt act in pursuance of the agreement. For this contention, Bach relies on his testimony that he only intended to steal money from Sauceda, and never intended to commit the murder, and further, that he never made any attempt to find, contact, or in any way harm Jara. However, we find the following evidence that, when combined, could be construed by a rational juror to contradict Bach's testimony, and thereby allow the jury to infer that the agreement was one in which Bach's intent was to commit a felony: (1) Sauceda testified that Bach had continuously maintained that he would go through with the murder; (2) Bach conceded at trial that he did agree to murder Jara; (3) Bach admitted at trial that he accepted between five and ten thousand dollars in exchange for agreeing to commit the murder; and (4) Bach spoke in code about the murder while he was in jail, saying that he was going to "take care of the truck" and "do some repairs" in exchange for money. We believe that this evidence, when viewed in the light most favorable to the prosecution, was sufficient to allow the jury to find all of the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *see also McCurry v. State*, No. 11-05-00387-CR, 2007 Tex. App. LEXIS 4617, at *4-5 (Tex. App–Eastland June 14, 2007) (mem. op., not designated for publication) (holding that the defendant's statements alone were sufficient evidence to uphold a conspiracy to commit capital murder conviction, despite the fact that the defendant "denied the intention to harm" the intended victim). Specifically, this evidence was sufficient to allow the jury to infer Bach's intent to carry out the object of the conspiracy, and though this evidence was contested, it was within the province of the jury to resolve this conflict. *See* TEX. PENAL CODE ANN. § 15.02(b); *Wesbrook*, 29 S.W.3d at 111. Additionally, the

6

evidence showing that Bach accepted and spent money as part of the agreement was uncontroverted, and this is a sufficient "overt act in pursuance of the agreement" to satisfy the "overt act" requirement of criminal conspiracy.  *See* TEX. PENAL CODE ANN. § 15.02(a)(2); *Brown v. State*, 576 S.W.2d 36, 42 (Tex. Crim App. 1978) (adopting the State's contention that, among other acts of the defendant, "[t]he act of accepting payment to kill an individual . . . must certainly be considered to be [an] overt act[] in pursuance to the agreement").   Therefore, we overrule Bach's first and third issues.

### III.  RENUNCIATION DEFENSE

By his second issue, Bach contends that there was insufficient evidence to show that he had not renounced his involvement in the conspiracy.   Renunciation, however, is an affirmative defense to criminal conspiracy, not an element of the offense.   *See* TEX. PENAL CODE ANN. § 15.04(b).   "A defendant bears the full burden of proof on an affirmative defense under Penal Code section 2.04."   *Madrid v. State*, 595 S.W.2d 106, 110-11 (Tex. Crim. App. [Panel Op.] 1979); *see also* TEX. PENAL CODE ANN. § 2.04(d) (Vernon 2003) ("If the issue of the existence of an affirmative defense is submitted to the jury, the court shall charge that the defendant must prove the affirmative defense by a preponderance of evidence.").   Therefore, the burden to prove the elements of this affirmative defense was placed on Bach, and the State was not required to show any evidence to negate this defense.   *See Adi*, 94 S.W.3d at 131 (noting that sufficiency of the evidence is measured by the elements of the offense).   Additionally, Bach clearly did not meet his burden on the renunciation defense, as he offered no evidence whatsoever that he had taken "further affirmative action" to prevent the commission of the object offense as required by the penal code.   *See* TEX. PENAL CODE ANN.

7

§ 15.04(b).  Accordingly, we overrule Bach's second issue.

### III. ACCOMPLICE WITNESS RULE

By his fourth issue, Bach contends that the evidence for each element of the offense was provided solely from the testimony of Sauceda and was not corroborated by independent evidence connecting him with the commission of the conspiracy as required by the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Rice v. State*, 605 S.W.2d 895, 897-98 (Tex. Crim. App. 1980). "If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of Article 38.14 has been fulfilled." *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (citing *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991)). As we have previously noted, the uncontested evidence that Bach accepted payment as a part of the agreement is non-accomplice corroborating evidence as to every element of the offense—namely that Bach (1) with felonious intent, (2) entered into an agreement to commit murder and (3) performed an overt act in furtherance of that agreement. No further evidentiary analysis is necessary, as any independent corroboration that merely "tend[s] to connect the accused with the extraneous offense" is sufficient to overcome the accomplice witness rule. *Rice*, 605 S.W.2d at 898. Nonetheless, the elements of the offense were also shown by Bach's own testimony, by testimony regarding Bach's recorded prison conversations, and by financial records obtained during execution of search warrants for the conspirators' homes. Accordingly, we overrule Bach's fourth issue.

### IV. JURY CHARGE

By his fifth issue, Bach argues that the trial court erred by not including an

instruction on the definition of "preponderance of the evidence" in the jury charge as it related to his affirmative defense of renunciation.

"Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). The degree of harm required to reverse the trial court's judgment depends on whether or not the appellant objected to the charge before it was given to the jury. *Id.* Under *Almanza v. State*, if the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Id.* at 743-44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). When the defendant fails to object, however, or states that he has no objection to the charge, "we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.*

The jury charge in this case clearly includes the instruction that Bach claims the trial court erred in excluding. In pertinent part, page 5 of the jury charge reads:

> It is an affirmative defense to this prosecution if, under circumstances manifesting a voluntary and complete renunciation of his criminal objective, the defendant withdrew from the conspiracy before commission of the object offense and took further action that prevented the commission of the object offense.
>
> In order for you to consider an affirmative defense, the defense must be established by a preponderance of the evidence. The term "preponderance of the evidence," as used herein, means the greater weight and degree of credible testimony or evidence introduced before you and admitted in evidence in the case.

By including this definition, the court sufficiently explained the meaning of "preponderance of the evidence" so as to allow the jury to properly resolve the issues.

9

*See Thomas v. State*, 474 S.W.2d 692, 695 (Tex. Crim. App. 1972). Therefore, we find

no error, and we overrule Bach's fifth issue.

## V. CONCLUSION

Finding no meritorious issue on appeal, we affirm the trial court's judgment.

_____

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P.47.2(B)

Delivered and filed the
10th day of March, 2011.